UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SUSAN KEMEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CINCINNATI BELL INC., an Ohio corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Susan Kemen ("Plaintiff" or "Kemen") brings this Class Action Complaint and Demand for Jury Trial against Defendant Cincinnati Bell, Inc., ("Defendant" or "Cincinnati Bell") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls after the consumer specifically requested that Defendant stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Susan Kemen is a resident of Quincy, Massachusetts.

2. Defendant Cincinnati Bell is an Ohio registered company headquartered in Cincinnati, Ohio. Defendant Cincinnati Bell conducts business throughout this District, Ohio, and the U.S.

**JURISDICTION AND VENUE**

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant resides in and conducts business in this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides here and the calls at issue were made from this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, Americans were receiving more than 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

CLASS ACTION COMPLAINT
-2-

11. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2022 alone, at a rate of 136 million calls per day. www.robocallindex.com (last visited on March 16, 2022).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Defendant Cincinnati Bell is an integrated communications solutions provider.

16. Defendant Cincinnati Bell runs telemarketing campaigns to solicit consumers to purchase their products and services.

17. Defendant Cincinnati Bell places telemarketing calls to consumers, without ever obtaining their express written consent to place such calls to their phone numbers.

18. Defendant Cincinnati Bell hires employees to place cold calls to consumers.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://intsignup.indeed.com/interview/6534f2f5-f7d6-4c2c-b1a9-a3c6b078eeb8

CLASS ACTION COMPLAINT
-3-

**Outside Sales Representative**

$100,000-$150,000+/year with unlimited commissions

Cincinnati Bell is now hiring a select number of Outside Sales Representatives to "join our family" and help facilitate the rapid growth and expansion of our products & services (Internet, Cable, Phone). This highly lucrative position will be responsible for selling assigned area consumers through door-to-door (cold-calling) activity, working lead lists, referrals, leaving door hangers & promotional information in new areas launched by Cincinnati Bell, and other related sales activities as needed. Experience in the sales role is a plus but not required. *Excellent communication/" people skills" is a must!

**Benefits – Outside Sales Representative**

- $2,000 Sign-on Bonus
- Comprehensive benefits package starting day one (Medical, Dental, Vision, 401k, etc...)
- Mileage Stipend
- Paid Training
- Training bonus
- New monthly leads
- Company issued cell phone and laptop

19. Multiple consumers have posted complaint regarding unsolicited telemarketing calls they received from and/or on behalf of Defendant Cincinnati Bell, similar to those received by Plaintiff Kemen, including calls made after stop requests by the consumers like in Plaintiff Kemen's case, for instance:

- "I have requested do no call/do not contact from this company on 3 separate occasions and now of these requests have worked. I spoke with someone who believed that while I might be off the call list in their central hub I'll still appear at each individual store location list because they don't make edits to the list at the same time. I chose to trust that they were respecting my wishes before but not any longer. I believe they have very suspect practices for monitoring their do not contact marketing list." [4]

- "Cincinnati Bell continues to call me to sell their services and each time I tell the person calling to take my number off their calling list. They say they will and then in a couple weeks I get another call. This is a bad business practice and others should be aware before doing business with this company." [5]

---

[4] https://www.bbb.org/us/oh/cincinnati/profile/telephones/altafiber-0292-3157/complaints
[5] *Id*.

CLASS ACTION COMPLAINT
-4-

20. Multiple employees of Defendant Cincinnati Bell have posted reviews indicating the volumes of cold calls they used to make for or on behalf of the Defendant for selling Defendant's products and services to the consumers, including:

- **Don't go there**
  Fioptic Account Manager (Current Employee) - Cincinnati, OH - November 23, 2019

  Worked there for 3 years. Always made my goal, but they just kept raising it. Went up 35% in a year. Parking pass has to be paid for by employee now. Commissions cut every time you turn around. Can't get a pto day to go to the doctors. No flexibility. We work off a dialer that gives bad leads with wrong numbers all day. Company stocks are dropping. Customers bills are not as promised. [6]

- **Great entry level positions**
  Account Manager (Former Employee) - Cincinnati, OH - July 24, 2018

  In the sales role i was responsible for making cold calls to set up appointments. I would travel out to potential and existing customers to discuss cell phone and internet opportunities Cincinnati Bell could offer.
  Able to upsell customers to meet my sales goals. [7]

- **Management to Salesperson disconnect**
  Fioptics Account Manager (Former Employee) - Cincinnati, OH - October 29, 2017

  They cut the heck out of the prices, free this and free that, MGR takes no hit sales rep does. If the UNION Tech decides he doesn't want to get out the truck, salesperson gets a "No Access and a Cancellation"
  Typical day 200 speed dialer calls 180 hangups, 17 are you kidding me, and might have 3 real conversations.
  Most people hired on dont realize how bad a reputation the company has.
  During interview process you sit with sales people not doing what you will be doing. You get a rosy impression, which quickly rots within 4 weeks of completing 30 days of training which is awesome.
  HR and trainers were top notch. [8]

21. In response to these calls, Plaintiff Kemen brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

---

[6] https://www.indeed.com/cmp/Cincinnati-Bell/reviews?fcountry=US&sort=rating_asc
[7] https://www.indeed.com/cmp/Cincinnati-Bell/reviews?fcountry=US&sort=rating_asc
[8] https://www.indeed.com/cmp/Cincinnati-Bell/reviews?fcountry=US&sort=rating_asc

**PLAINTIFF KEMEN'S ALLEGATIONS**

22. In January 2022, Plaintiff Kemen visited the Defendant's website and requested for a quote from them. Plaintiff did not provide her express written consent to receive calls from or on behalf of the Defendant.

23. Defendant's website did not inform the Plaintiff that she would be receiving any phone calls from or on behalf of Defendant Cincinnati Bell, and it never took the Plaintiff's consent for calling her phone number.



[9]

24. On January 20, 2022, at 3:32 PM, Plaintiff received a call from the phone number 513-565-9606 to her cell phone. Plaintiff answered the call, and the caller was soliciting Defendant Cincinnati Bell's products and services. Plaintiff instructed Defendant's employee to stop calling her cell phone.

25. Just a minute after making the stop request, at 3:33 PM, Plaintiff Kemen received another call from the same phone number, 513-565-9606. Plaintiff did not answer this call.

---

[9] https://www.cincinnatibell.com/shop-cincinnati-bell?addtocart=500Mbps

26. On January 25, 2022, at 5:33 PM, Plaintiff received a call from the Defendant using the phone number 513-566-7016. Plaintiff did not answer this call.

27. On calling this phone number 513-566-7016, it reaches the voicemail of Eric Naegel, an employee of Defendant Cincinnati Bell.

28. On January 25, 2022, at 5:35 PM, Plaintiff received an email from Eric Naegel, using the email address eric.naegel@cinbell.com soliciting Defendant's products and services to the Plaintiff=.

29. Plaintiff Kemen responded to Eric's email asking the Defendant to stop calling and emailing her. Eric acknowledged her stop request the following day.

30. Despite making multiple stop requests to Defendant's employees via phone calls, and email, Plaintiff Kemen continued to receive telemarketing calls from or on behalf of Defendant Cincinnati Bell.

31. On February 1, 2022, at 1:08 PM, Plaintiff received a call from Defendant Cincinnati Bell using the phone number 513-943-4301. Plaintiff answered the call asked the Defendant's employee to stop calling her cell phone once more.

32. The phone number 513-943-4301 belongs to Defendant Cincinnati Bell.



33. Plaintiff Kemen did not provide her consent to receive any telemarketing calls from or on behalf of the Defendant to her cell phone and in fact requested that the calls stop.

34. The unauthorized solicitation calls that Plaintiff received from and/or on behalf of the Defendant, as alleged herein, have harmed Plaintiff Kemen in the form of annoyance, nuisance, and invasion of privacy, occupation of her phone lines and disturbance to the use and enjoyment of her phone, wear and tear on the phone's hardware (including the phone's battery) and consumption of memory on the phone.

35. Seeking redress for these injuries, Plaintiff Kemen, on behalf of herself and Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

36. Plaintiff Kemen brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) for substantially the same reason Defendant called Plaintiff, including (4) at least one call after they requested that Defendant stop calling.

---

[10] https://www.google.com/search?q=513-943-4301&oq=513-943-4301

37. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

38. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(b) whether the calls constitute a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Adequate Representation**: Plaintiff Kemen will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff Kemen has no interests antagonistic to those of the Class, and Defendant has no defenses unique to the Plaintiff. Plaintiff Kemen and her counsel are committed to vigorously

prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kemen nor her counsel have any interest adverse to the Class.

41. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Kemen. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kemen and the Internal Do Not Call Registry Class)**

42. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

43. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

44. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be

called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

45. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

46. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Kemen, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Kemen as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kemen requests a jury trial.

DATED this 23rd day of March, 2022.

        **SUSAN KEMEN**, individually and on behalf of all others similarly situated,

        <u>By:</u> */s/ Brian Giles*

        Brian Giles
brian@gilesfirm.com
LAW OFFICES OF BRIAN T. GILES, LLC
1470 Apple Hill Rd.,
Cincinnati, OH 45230
Telephone: (513) 379-2715

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*