# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**SUSAN KEMEN, *individually, and on behalf of all others similarly situated*,**

        **Plaintiff,**

        **v.**

**CINCINNATI BELL TELEPHONE COMPANY LLC, *d/b/a*, CINCINNATI BELL,**

        **Defendant.**

**Case No. 1:22-cv-152**
**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

The cause is before the Court on Defendant Cincinnati Bell Telephone Company LLC's Motion to Dismiss and/or Strike Certain Allegations (Docs. 9) from Plaintiff Susan Kemen's Amended Complaint (Doc. 6). For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss portion of that filing, and **DISMISSES** Kemen's Amended Complaint (Doc. 6) **WITHOUT PREJUDICE**. That said, the Court **GRANTS** Kemen thirty days to seek leave to file a Second Amended Complaint, addressing the deficiencies set forth below. Further, the Court **DENIES** the Motion to Strike portion of the filing **AS MOOT**. Finally, the Court **DENIES** Cincinnati Bell, Inc.'s (the original defendant) Motion to Dismiss and Motion to Strike (Doc. 5) **AS MOOT** and **DISMISSES** Cincinnati Bell, Inc., from this action.

## BACKGROUND

Like many, Plaintiff Susan Kemen receives unwanted commercial solicitations to her cell phone. Unlike many, Kemen decided to see if she could do something about

it. In this action, Kemen endeavors to represent a class asserting claims against Defendant Cincinnati Bell Telephone Company LLC.[1] Because this matter is at the motion-to-dismiss stage, the Court's factual descriptions rely on the allegations in the Amended Complaint. But this comes with the caveat that they are just that— allegations.

In January 2022, Kemen visited Cincinnati Bell's website and filled out a quote request form. (Am. Compl., Doc. 6, #63). (As Kemen originally sued Cincinnati Bell, Inc., it's unclear from the Amended Complaint which "Cincinnati Bell" operates this website.) The online form she used included fields for her name, email address, and phone number. (*Id*.). The Amended Complaint does not identify the product or service for which she sought a quote, nor does it indicate how Kemen expected Cincinnati Bell to respond to her request.

In any event, Kemen alleges an employee from Defendant Cincinnati Bell Telephone Company LLC called her on January 20, 2022, at 3:32 p.m. (*Id*.). The employee solicited her to purchase what she describes only as Cincinnati Bell's "products and services." (*Id*.). Although most of their conversation remains a mystery so far, Kemen does allege she asked the employee to stop calling her cell phone. (*Id*.). That ended the call. Then, one minute later at 3:33 p.m., Kemen alleges the same number called her again. (*Id*.). Kemen did not answer that second call. (*Id*.).

---

[1] More correctly, Cincinnati Bell Telephone Company LLC is the defendant she *now* names. She originally sued Cincinnati Bell, Inc. (now doing business as Altafiber). (*See* Doc. 1). That entity appears to be Cincinnati Bell Telephone Company LLC's corporate parent. Her Amended (and now operative) Complaint, though, names only Cincinnati Bell Telephone Company LLC. (Doc. 6).

Five days later, on January 25, 2022, at 5:33 p.m., Kemen alleges she received another call from Defendant Cincinnati Bell. (*Id.* at #64). She again did not answer. (*Id.*). Two minutes later, she received an email from an employee of Defendant Cincinnati Bell. (*Id.*). This email too solicited her to purchase Cincinnati Bell's "products and services." (*Id.*). Kemen alleges she replied to the email, again asking to no longer receive emails or phone calls from Cincinnati Bell. (*Id.*). The employee confirmed receipt of that email the next day. (*Id.*).

Finally, roughly a week later, on February 1, 2022, at 1:08 p.m., Kemen received her fourth (and presumably last) call from Defendant Cincinnati Bell.[2] (*Id.*). This time she answered, repeating her request for no further calls. (*Id.*). Kemen does not allege receiving any more calls from Cincinnati Bell or its affiliates.

In all, Kemen claims she received four phone calls from Defendant Cincinnati Bell over twelve days between January 20 and February 1 of 2022. Of the four calls, Kemen answered only two. Further, her allegations that she sought a quote appear a tacit acknowledgment that her request likely prompted at least the first call. And she alleges the second call came mere moments after the first. But she also alleges she requested to be placed on Cincinnati Bell's internal do-not-call list during that first call, yet still received three more calls (and answered one).

---

[2] For now, the Court takes Kemen at her word that the fourth call came from Cincinnati Bell. However, Kemen's Amended Complaint is somewhat confusing on this point. Kemen claims she received the fourth call from the phone number "513-943-4301" and that this number "is advertised on Defendant Cincinnati Bell's Website." (Doc. 6, #64). Kemen then depicts an image allegedly taken from Cincinnati Bell's website. (*See id.* at #65). But for whatever reason, the image shows a completely different phone number—513-986-0093. (*Id.* at #65).

On March 24, 2022, Kemen sued Cincinnati Bell, Inc., on behalf of herself and those similarly situated. (Doc. 1). Kemen's Complaint pursued one claim under the Telephone Consumer Protection Act against Cincinnati Bell, Inc., for violating 47 C.F.R. § 64.1200(d). (*Id.* at #10–12). Other than her own factual allegations, Kemen's Complaint included anonymous internet complaints posted by former Cincinnati Bell employees, as well as anonymous complaints from people Cincinnati Bell had apparently (repeatedly) called. (*Id.* at #4–5). Kemen further sought monetary and injunctive relief on behalf of both herself and the class of similarly affected individuals. (*Id.* at #12–13).

Soon thereafter, Cincinnati Bell, Inc., moved to dismiss. (Doc. 5). In part, Cincinnati Bell, Inc., argued that Kemen had sued the wrong entity, as Cincinnati Bell, Inc., was a holding company and did not make calls to prospective customers. (*Id.* at #46–47); (Wilson Decl., Doc. 5-1). Responding to this new information, Kemen submitted an Amended Complaint a week later. (Doc. 6). Her Amended Complaint mirrored her original allegations and cause of action, but she instead named Cincinnati Bell Telephone Company LLC—and that entity alone—as defendant.[3] (*Id.* at #58).

On May 18, 2022, Defendant Cincinnati Bell Telephone Company LLC moved to dismiss. (Doc. 9). Cincinnati Bell argued Kemen had not stated a plausible claim

---

[3] It appears that while the original Complaint was pending, Kemen served Cincinnati Bell, Inc., the defendant that pleading named. (*See* Executed Summons, Doc. 4). The Amended Complaint, however, does not assert any cause of action against that entity. Accordingly, the Court construes that Amended Complaint as Kemen tacitly requesting the Court to drop Cincinnati Bell, Inc., as a party. Accordingly, the Court drops Cincinnati Bell, Inc., and **DISMISSES** it from this action.

under the TCPA and 47 C.F.R. § 64.1200(d). (*Id.* at #87). Next, Cincinnati Bell claimed Kemen lacked constitutional standing to pursue prospective injunctive relief. (*Id.*). Finally, assuming the Court chose not to dismiss the action, Cincinnati Bell asked the Court to strike from the Amended Complaint both the anonymous complaint allegations and the class allegations. (*Id.*). Kemen responded that she had stated a plausible claim, had statutory standing to pursue injunctive relief, and had grounds to include the anonymous complaints and class allegations in her Amended Complaint. (*See* Doc. 10). Cincinnati Bell replied. (Doc. 11). The matter is now ripe.

## LEGAL STANDARDS

Defendant Cincinnati Bell has moved to dismiss Kemen's Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In resolving that motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Likewise, the Court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

5

At the pleadings stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Kemen] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted). In sum, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Under the *Iqbal/Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants endure the potential rigors (and costs) of the discovery process. Parties engage in discovery not to determine whether a claim exists, but to gather evidence for an already plausibly stated claim. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

## LAW AND ANALYSIS

In seeking dismissal, Cincinnati Bell argues Kemen's Amended Complaint has not adequately pled that Kemen is a residential telephone subscriber, that Cincinnati Bell failed to implement minimum procedures, that Cincinnati Bell placed the calls for telemarketing purposes, and that any potential regulatory violations were "willful." (Doc. 9, #90–94). Kemen responds that she has plausibly alleged all necessary elements for her claim. (Doc. 10, #111–18).

6

As described below, the Court agrees with Cincinnati Bell that Kemen has so far failed to plausibly state a claim under the TCPA. So the Court **GRANTS** Cincinnati Bell's Motion to Dismiss. (Doc. 9). But the Court does so **WITHOUT PREJUDICE** and **GRANTS** Kemen thirty days in which to seek leave to file a Second Amended Complaint. Further, because the Court dismisses Kemen's Amended Complaint, that moots Cincinnati Bell's Motions to Strike.

## A.   Kemen's Amended Complaint Fails To State A Claim Under The TCPA.

Congress enacted the Telephone Consumer Protection Act ("TCPA") in 1991 in part to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Under this statute, Congress authorized the FCC to promulgate regulations to further this purpose. *Id.* § 227(c)(3). And to add teeth to those regulations, Congress granted a private right of action to anyone who received more than one telephone call in a twelve-month period by the same entity in violation of a regulation. *Id.* § 227(c)(5).

Here, Kemen accuses Defendant Cincinnati Bell of violating only one regulation—47 C.F.R. § 64.1200(d). This is commonly referred to as the FCC's "internal do not call" regulation. It prohibits an entity from calling residential subscribers for telemarketing purposes without first implementing certain minimum internal procedures allowing recipients to opt out of future calls. *Id.* The regulation states, in full:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or

entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated

8

entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

To adequately state her claim then, Kemen must plausibly allege at least the following: (1) she is a residential phone subscriber, (2) receiving a call made telemarketing purposes, (3) from an entity that has not implemented the minimum procedures, (4) more than one time in a twelve-month period. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(5); 47 C.F.R. § 64.1200(d), (f)(12); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200–01 (M.D. Tenn. 2017); *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 505 (D.R.I. 2020) (articulating this standard); *see also Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009) ("The 'violation of the regulations' is … the initiation of the phone call without having implemented the minimum procedures.").

The Court begins and ends with the first element—whether the recipient is a residential phone subscriber. As noted, the TCPA protects "residential subscribers," 47 U.S.C. § 227, which the FCC defines as a "subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d). And 47 C.F.R. § 64.1200(d) regulates only calls made "to a residential telephone subscriber." Thus, to state a claim, Kemen must plausibly allege that she is a residential telephone subscriber, rather than a business subscriber. She has not.

9

Kemen claims that she received the calls to her cell phone. To be sure, cell phones *can* be "residential" under the TCPA. *See Hodgin v. Parker Waichman LLP*, No. 3:14-cv-733, 2015 WL 13022289, at *3–4 (W.D. Ky. Sept. 30, 2015); *Cunningham*, 251 F. Supp. 3d at 1201; *Mantha v. Quotewizard.com, LLC*, No. 19-12235, 2021 WL 6061919, at *4–5 (D. Mass. Dec. 13, 2021) ("Yet by extending DNC protection to cellular numbers, which are inherently mobile and not limited to use in the home, it is reasonable to interpret the TCPA and its relevant regulations as extending DNC protection to cellular numbers that are not used exclusively in the home."). But the question remains whether she has plausibly alleged *this* cell phone was residential.

To answer that question, many courts rely on FCC language that the Commission "presume[s] wireless subscribers who ask to be put on the national do-not-call list to be residential subscribers." 18 FCC Rcd 14014, 14039 (2003). In other words, courts find it at least plausible a plaintiff's mobile phone is residential if he has previously registered it with the national do-not-call registry.[4] *See Hodgin*, 2015 WL 13022289, at *3–4; *Balack v. RentBeforeOwning.com*, No. LA CV21-09048, 2022 WL 7320045, at *3–4 (C.D. Cal. Oct. 11, 2022) (collecting cases); *see also Rose v. New TSI Holdings, Inc.*, No. 21-cv-5519, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) ("Though Rose does not specifically allege that his cell phone number was a residential one, he alleges that it was a personal number that he did not use for

---

[4] At least one court has suggested that more factual allegations are required at the motion to dismiss stage. *See Valdes v. Century 21 Real Estate, LLC*, Civ. No. 2:19-5411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) (finding the claim adequately pled because plaintiff had "alleged that his cellular telephone number was not used for a business purpose," as opposed to simply because the number was registered to the national do-not-call registry).

business purposes and that it has been listed on the DNC Registry since 2004. At the motion to dismiss stage, these allegations are sufficient for Rose's TCPA claims to move forward.").

But here, that presumption does not apply—Kemen's Amended Complaint does not allege that she registered her cell phone number to the national do-not-call list. And, even read generously, her Amended Complaint nowhere offers any other facts suggesting she is a "residential telephone subscriber." 47 C.F.R. § 64.1200(d). Without more, Kemen has not plausibly alleged this element. *See Cunningham v. Rapid Cap. Funding, LLC/RCF*, No. 3:16-cv-02629, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and recommendation adopted*, 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017) (finding a TCPA claim inadequately pled without allegations showing residential use); *Hicks v. Alarm.com, Inc.*, No. 1:20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (same).

While her complaint does not allege it, Kemen responds in her opposition briefing that she registered her cell phone on the national do-not-call list in 2011. She also urges the Court to take judicial notice of this fact. (Resp., Doc. 10, #109, 111). In support, she attaches an exhibit of an email purportedly from the "National Do Not Call Registry" stating "You successfully registered your phone number ending in 4609 on May 13, 2011." (Doc. 10-1, #125).

For at least two reasons, though, the Court cannot take judicial notice. First, the email she attaches does not identify *Kemen* as the registered individual. (*Id.*). Instead, someone else appears to have solicited the email, and nothing in the email

references Kemen. (*See id.* (listing the recipient as "Avi Kaufman")).[5] Second, Kemen's Amended Complaint does not include her cell phone number. Thus, the Court cannot tell if she owns the "phone number ending in 4609," or more importantly, if that is the number Cincinnati Bell allegedly called. (*Id.*).

Unable to take judicial notice, the Court is left with the allegations—or rather the lack thereof—in Kemen's Amended Complaint. Accordingly, Kemen has not plausibly alleged she is a residential telephone subscriber.

That said, Kemen requests to amend her complaint to supplement her allegations. (Resp., Doc. 10, #112). So, although the Court dismisses Kemen's Amended Complaint, the Court does so without prejudice and permits her to seek leave to file a Second Amended Complaint to cure this deficiency. *See Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (permitting amendment to better allege residential use).

## CONCLUSION

For the reason discussed, the Court **GRANTS** Cincinnati Bell Telephone Company LLC's Motion to Dismiss (Doc. 9) and **DISMISSES** Kemen's Amended Complaint (Doc. 6) **WITHOUT PREJUDICE**. That said, the Court **GRANTS** Kemen thirty days to move for leave to file a Second Amended Complaint addressing the deficiencies set forth above and attaching that proposed Second Amended

---

[5] The Court notes that Avi Kaufman is also the name of one of Kemen's attorneys. (*See* Doc. 1, #13).

12

Complaint.[6] During that time, this Court retains jurisdiction over this action. Further, the Court **DENIES** Cincinnati Bell's Motion to Strike (Doc. 9) **AS MOOT**. Finally, the Court **DENIES** Cincinnati Bell, Inc.'s Motion to Dismiss and Motion to Strike (Doc. 5) **AS MOOT** and **DISMISSES** Cincinnati Bell, Inc., from this action.

      **SO ORDERED.**

January 23, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court notes that Defendant also seeks dismissal on the ground that the four calls alleged over twelve days, even coupled with the anonymous complaints, do not plausibly allege that Defendant lacked a policy, at the time calls were made, to honor do not call requests within a reasonable time. (Doc. 9, #92–93). If Kemen has any additional allegations addressing that issue, beyond those set forth in her Amended Complaint, she is **DIRECTED** to include them in any Second Amended Complaint. If and when the Court is called on to decide the sufficiency of a Second Amended Complaint, the Court will assume that she has included all such allegations.