## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**SUSAN KEMEN,**

        **Plaintiff,**

      **v.**

**CINCINNATI BELL TELEPHONE COMPANY, LLC,**

        **Defendant.**

**Case No. 1:22-cv-152**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

This case is about unsolicited telemarketing calls—or as they are more commonly known, spam calls. Plaintiff Susan Kemen alleges that Defendant Cincinnati Bell Telephone Company, LLC (Cincinnati Bell), violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, by making unwanted telemarketing calls to her cell phone. (Second Am. Compl., Doc. 19). The matter is now before the Court on Cincinnati Bell's (Second) Motion to Dismiss and/or Strike Certain Improper Allegations from Plaintiff's Second Amended Complaint, (Second Mot. to Dismiss, Doc. 20). For the reasons discussed below, the Court **DENIES** the Second Motion to Dismiss (Doc. 20) in its entirety.[1]

### BACKGROUND

The Court recounted the relevant allegations in its previous Opinion and Order dismissing the First Amended Complaint, (Doc. 12, #149–51), so it will not tarry long

---

[1] Because the Court is denying Cincinnati Bell's Motion, it also notes that it is denying Cincinnati Bell's request for oral argument on the Motion. (Doc. 20, #231).

on them here. Basically, Kemen alleges that in January 2022, she visited Cincinnati Bell's website and filled out an online quote request form. (Doc. 19, #222). That online form included fields for her name, email address, and phone number. (*Id.* at #223 (screenshot of online form)). The Second Amended Complaint, like the previous iterations, does not identify the products or services for which Kemen sought a quote, nor does it indicate how she expected Cincinnati Bell to respond to her request.

Kemen goes on to allege that, after completing the form, a Cincinnati Bell employee called her cell phone at 3:32 p.m. on January 20, 2022, asking her to purchase Cincinnati Bell's "products and services." (*Id.*). One minute later, the same number called her again. (*Id.*). Kemen did not answer that second call, but she alleges that calls to that number go to a Cincinnati Bell employee's voicemail. (*Id.*).

Five days later, Kemen alleges she received a third call from Cincinnati Bell. (*Id.*). She also did not answer that call, which came from a different number from the first two calls. (*Id.*). But she alleges that this second number also connects to a Cincinnati Bell employee's voicemail. (*Id.*).

Two minutes later, Kemen allegedly received an email from Cincinnati Bell employee Eric Naegel—the same employee whose voicemail she alleges the second phone number reaches. (*Id.* at #223–24). That email also solicited her to buy Cincinnati Bell's "products and services." (*Id.* at #224). Kemen alleges she replied to the email, once again asking to no longer receive emails or phone calls from Cincinnati Bell. (*Id.*). Naegel "acknowledged her stop request the following day," presumably by reply email. (*Id.*).

Finally, roughly a week later, at 1:08 p.m. on February 1, 2022, Kemen received her fourth and final call from a third phone number, which she says also belongs to Cincinnati Bell.[2] (*Id.*). She answered that call and once again asked Cincinnati Bell to stop calling her. (*Id.*). Kemen does not allege she received any more calls from Cincinnati Bell or its affiliates after that.

On March 24, 2022, Kemen sued Cincinnati Bell, Inc., on behalf of herself and those similarly situated. (Doc. 1). The original Complaint pursued one claim under the TCPA against Cincinnati Bell, Inc., for violating 47 C.F.R. § 64.1200(d). (*Id.* at #10–12). Along with Kemen's own factual allegations, the Complaint included screenshots of a job posting and anonymous internet complaints posted by current and former Cincinnati Bell employees. (*Id.* at #4–5). It also included anonymous complaints from people whom Cincinnati Bell apparently called repeatedly despite their requests for no further contact. (*Id.* at #4). Based on all those allegations, Kemen sought monetary and injunctive relief on behalf of herself and a class of similarly affected individuals. (*Id.* at #12).

Cincinnati Bell, Inc., then moved to dismiss. (Doc. 5). Among other things, it argued Kemen had sued the wrong entity because Cincinnati Bell, Inc., was a holding

---

[2] As the matter is before the Court only on the allegations in the Complaint, the Court takes Kemen at her word that the fourth call came from Cincinnati Bell. But the Second Amended Complaint is somewhat confusing on this point. Kemen claims she received the fourth call from the phone number "513-943-4301" and that this number "is advertised on Defendant Cincinnati Bell's Website." (Doc. 19, #224). Kemen then inserts a screenshot allegedly taken from Cincinnati Bell's website. (*Id.*). But the screenshot shows a different phone number: 513-986-0093. (*Id.*). That said, a Google search suggests that the telephone number she lists in her Second Amended Complaint is associated with an Altafiber store, and Altafiber appears to be a name associated with Cincinnati Bell.

company and did not make calls to prospective customers. (*Id.* at #46–47; Wilson Decl., Doc. 5-1 ¶ 6, #57 ("CBI acts only as a holding company and does not itself provide any communications or other services to the public. CBI does not make or hire others to make any telemarketing calls. The telephone numbers 513-565-9606, 513-566-7016 and 513-943-4301 do not belong to and are not used by CBI. 'Eric Naegel,' who is referred to in the Complaint, is not an employee of CBI.")).

Rather than oppose the motion, Kemen filed the First Amended Complaint a week later. (Doc. 6). Her First Amended Complaint mirrored her original allegations and cause of action but named Cincinnati Bell Telephone Company, LLC, as the sole Defendant. (*Id.* at #58).

On May 18, 2022, Cincinnati Bell Telephone Company, LLC, moved to dismiss the First Amended Complaint and, in the alternative, to strike certain allegations. (First Mot. to Dismiss, Doc. 9). First, it argued Kemen had not stated a plausible claim under the TCPA and 47 C.F.R. § 64.1200(d)—the regulation governing internal do-not-call (DNC) lists. (*Id.* at #89–94). Next, it argued Kemen lacked Article III standing to pursue prospective injunctive relief. (*Id.* at #95–96). Finally, assuming the Court chose not to dismiss the action, Cincinnati Bell asked the Court to strike the job posting, anonymous complaints, and class allegations from the First Amended Complaint. (*Id.* at #96–103). Kemen responded that she had stated a plausible claim, had statutory standing to pursue injunctive relief, and had grounds to include the job posting, anonymous complaints, and class allegations in her First Amended Complaint. (*See* Doc. 10). Cincinnati Bell replied. (Doc. 11).

The Court granted Cincinnati Bell's motion to dismiss the First Amended Complaint, and thus denied as moot Cincinnati Bell's motion to strike. (Doc. 12, #160–61). More specifically, the Court determined that Kemen had not plausibly alleged that she was a residential subscriber—a necessary element of her claim under 47 C.F.R. § 64.1200(d). (*Id.* at #155–60). But because it determined Kemen might be able to cure this deficiency by pleading additional factual allegations, it dismissed the First Amended Complaint without prejudice and granted Kemen thirty days to seek leave to file a Second Amended Complaint. (*Id.* at #160–61). And because Kemen dropped Cincinnati Bell, Inc., as a defendant when she filed her First Amended Complaint, the Court also dismissed Cincinnati Bell, Inc., from the action and denied Cincinnati Bell, Inc.'s, Motion to Dismiss (Doc. 5) as moot. (Doc. 12, #161).

Kemen accepted the Court's invitation and moved for leave to file a Second Amended Complaint, to which she attached the proposed Second Amended Complaint. (Doc. 13). Defendants responded by arguing that filing the Second Amended Complaint would be futile as it still fails to state a claim. (Doc. 14).

The Court rejected Defendants' arguments for the most part, finding that Kemen's Second Amended Complaint plausibly alleged all four elements of a viable TCPA claim. (Doc. 17, #214). So it ordered Kemen to file her Second Amended Complaint on the docket and Cincinnati Bell to file an answer thereafter. (*Id.* at #214–15). But Cincinnati Bell also had argued that Kemen lacked Article III standing to seek injunctive relief because the Second Amended Complaint did not plausibly allege Cincinnati Bell will call her again. (*Id.* at #214). As Kemen had not responded

5

to that argument, the Court also ordered her to brief that specific issue. (*Id.* at #214–15). Instead, when she filed the Second Amended Complaint (Doc. 19), she also filed a notice withdrawing the claim for injunctive relief. (Doc. 18).

Cincinnati Bell answered the Complaint as the Court had ordered. (Doc. 21). But on top of that, and despite the Court's Opinion and Order (Doc. 17) rejecting Cincinnati Bell's futility argument and holding that Kemen has plausibly alleged her TCPA claim, Cincinnati Bell also moved to dismiss the Second Amended Complaint for failure to state a claim. (Doc. 20). It casts that motion as "not seeking reconsideration but, rather, and respectfully, [] exercising its rights to file a dispositive motion in response to the SAC as the current operative pleading in this matter and to move to strike Plaintiff's improper allegations under Rule 12, and so to avoid waiver of other legal rights in relation to the SAC."[3] (*Id.* at #231 n.1).

In arguing that the Court should dismiss the Second Amended Complaint, Cincinnati Bell focuses on one of the four TCPA elements—the one that requires Cincinnati Bell to have in place "minimum internal procedures" to avoid unwanted telephone solicitations. (*Id.* at #242–47). But despite its claim that it does not seek reconsideration, this is not a new argument—Cincinnati Bell made the same argument in its earlier opposition to Kemen's motion seeking leave to file. (Doc. 14, #183–85). And the Court rejected it because it found that Kemen's receiving three

---

[3] It is worth noting that Cincinnati Bell was not likely at risk of waiver by not re-raising its arguments. Neither waiver nor forfeiture occur when a party has raised claims or arguments at the proper time and has acted consistently with those claims or arguments. *See Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, No. 1:22-cv-639, 2024 WL 205474, at *14 n.9 (S.D. Ohio Jan. 19, 2024). Cincinnati Bell had done both here.

more calls in the twelve days after she had asked not to be called gave rise to an inference of the lack of such procedures. (Doc. 17, #213–14).

Beyond raising its already-rejected argument that Kemen had defectively pleaded the TCPA claim, the new motion also seeks to strike (1) the class allegations as facially flawed, and (2) certain other allegations as improper. (Doc. 20, #248–55). Cincinnati Bell has advanced those arguments before, too. (Doc. 9, #96–103). But the Court did not address them the first time Cincinnati Bell made them because the Court granted the First Motion to Dismiss, (Doc. 12, #160–61), so it makes sense that Cincinnati Bell would renew its request to strike these allegations.

The allegations that Cincinnati Bells seeks to strike fall into three general categories: anonymous online complaints, the job posting screenshot, and the class allegations. (Doc. 20, #248–55). As to the first and second categories, it basically argues that the facts are irrelevant even if true, so they have no place in the Second Amended Complaint. (*Id.*). And as to the third, it argues that (1) the class definition is "impermissibly overbroad," and (2) individual issues would inherently predominate at the class certification stage, so striking the class definition and allegations at the pleadings stage is appropriate. (*Id.* at #252–55).

Kemen responded to Cincinnati Bell's filing by first noting, correctly and perhaps unsurprisingly, that Cincinnati Bell's argument for dismissal merely rehashes an argument the Court already rejected. (Doc. 25, #285–86). As for the request to strike, she argues that the Court should not strike the anonymous internet allegations and job posting because they "are relevant to Plaintiff's allegations that

7

the calls she received from Cincinnati Bell (1) were telemarketing, (2) evidenced Cincinnati Bell's failure to maintain adequate policies and procedures for maintaining an internal do not call list, and (3) were willful and knowing TCPA violations." (*Id.* at #286). Finally, she argues that the Court should not strike the class allegations because class members are easily ascertainable from Defendant's internal records; the class is not overbroad because it is limited to consumers who were called at least once after asking not to be called; and the class definition can be amended as needed before certification, so striking the class allegations is not appropriate at this stage. (*Id.* at #287–89). Cincinnati Bell has since replied. (Doc. 26).

The matter is now before the Court on the Second Motion to Dismiss.

## LEGAL STANDARDS

### A. The Motion For Reconsideration Standard

Cincinnati Bell claims it is not moving for reconsideration. (Doc. 20, #231 n.1). But its motion to dismiss merely reraises arguments the Court has already addressed. (Doc. 17, #213–14; *compare* Doc. 14, #182–88, *with* Doc. 20, #242–47). That is a motion for reconsideration, whether labeled as such or not. So the Court "us[es] its discretion to address substance over form," *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012), and treats the "motion to dismiss" as a motion for reconsideration of its previous Opinion granting Kemen leave to file the Second Amended Complaint. *Accord Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("The label attached to a motion does not control its substance." (cleaned up)).

8

The Court of course has authority to consider such requests. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (noting that while "[t]he Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders[,] … the authority for hearing such motions has a common law basis … [and has] additional support in Federal Rule of Civil Procedure 54(b)"). Perhaps not surprisingly, though, motions for reconsideration face a high hurdle and are rarely granted. "Traditionally, courts will find justification for reconsidering interlocutory orders [only] when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or [to] prevent manifest injustice." *Id*. Importantly, "[a] motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue." *Breeders' Cup Ltd. v. Nuvei Techs., Inc.*, No. 5:19-cv-00113, 2023 WL 6135671, at *2 (E.D. Ky. Sept. 19, 2023).

## B.    The Motion to Strike Standard

Separately, Federal Rule of Civil Procedure 12(f) governs motions to strike. That rule allows the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). For Rule 12(f) purposes, "[a]llegations in a pleading are immaterial if they have no essential or important relationship to the claim and are impertinent if they do not pertain, and are not necessary to the issues in question." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-03-06-371, 2007 WL 1026421, at *11 (S.D. Ohio Mar. 29, 2007). But "[m]otions to strike are viewed with disfavor and are not frequently granted."

9

*Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *accord Mapp v. Bd. of Ed. of Chattanooga*, 319 F.2d 571, 576 (6th Cir. 1963) ("It is a drastic remedy to be resorted to only when required for the purposes of justice."). Accordingly, a "motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

That said, "[p]arties can use a Rule 12(f) motion to attack class certification. But a movant who moves to strike class allegations bears the burden of demonstrating that, from the face of the complaint, it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2021 WL 2476882, at *11 (S.D. Ohio June 17, 2021) (cleaned up). Therefore, striking class allegations before discovery is appropriate "only if the Court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claims succeed in class action form. In all other cases, the court should defer decision on certification pending discovery." *Id.* (cleaned up).

## LAW AND ANALYSIS

The Court begins with the motion for reconsideration. Then, because it is denying that portion of Cincinnati Bell's motion, the Court considers Cincinnati Bell's argument that it should strike certain allegations from the Second Amended Complaint.

10

A.      **The Motion For Reconsideration**

When it granted Kemen leave to file the Second Amended Complaint, the Court found that she plausibly alleged all four elements of her TCPA claim. (Doc. 17, #206–14). That includes the element as to which Cincinnati Bell now renews its argument—whether Cincinnati Bell had the requisite minimum internal procedures in place. (Doc. 20, #242–47). While Cincinnati Bell is of course free to disagree with the Court's plausibility determination, to obtain reconsideration, it must show "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or [to] prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. But Cincinnati Bell does not even endeavor to make any such showing, nor to the Court's knowledge could it. In short, nothing has changed since the Court first considered that argument. So Cincinnati Bell's "motion to dismiss," which is really a motion for reconsideration, is merely an attempt "to relitigate the issue." *Breeders' Cup Ltd.*, 2023 WL 6135671, at *2.

Beyond that, the real problem on this element, as least in the Court's view, is that, as the Court previously observed, "the existence of minimum procedures and the reasonableness of Cincinnati Bell's delay are factual matters better addressed at summary judgment." (Doc. 17, #214). Does that mean that Cincinnati Bell must wait to seek to vindicate its position until discovery is complete? No. If Cincinnati Bell has such procedures in place, and if it thinks its procedures clear the necessary threshold as a matter of law, it is free to produce the procedures and move for summary judgment on that basis—or indeed to attach them by way of an authenticating affidavit to such a motion. True, if Plaintiffs need specific discovery to respond to that

11

argument, they will be entitled to seek it. Fed. R. Civ. P. 56(d). But they will need to show what they need and why.

But regardless whether Cincinnati Bell chooses to present this argument on a more fully developed factual record somewhere down the road, the only question now is whether the Court wishes to reconsider its earlier decision on the sufficiency of Kemen's allegations. The answer to that question is no. Accordingly, the Court denies Cincinnati Bell's motion for reconsideration.

## B.    The Motion to Strike.

Separately, Cincinnati Bell seeks to strike four things from the Second Amended Complaint. (Doc. 20, #250). The first is a job posting for an Outside Sales Representative that lists "door-to-door (cold-calling) activity" and "working lead lists" as position responsibilities. (Doc. 19, #219–20). The second is a pair of anonymous customer complaints from Cincinnati Bell's Better Business Bureau (BBB) page in which customers say Cincinnati Bell refused to stop calling them after they requested no further contact. (*Id.* at #220). The third is a screenshot of three current and former employees' reviews on Indeed, each of which talks about using a speed dialer and/or making cold calls. (*Id.* at #221). And the fourth is Kemen's proposed class definition, along with other class-related allegations. (*Id.* at #225–27). The Court treats the first three as a group, then separately considers the class-related allegations.

### 1.    The Online Complaints

As to the first three things Cincinnati Bell wants to strike—the job posting, the BBB complaints, and the Indeed reviews—Cincinnati Bell says that "Plaintiff's

vague and unsubstantiated internet complaints regarding 'cold calls' or 'unsolicited' telemarketing calls to others are irrelevant, immaterial, have no bearing on Plaintiff or this case, and only serve to unduly prejudice CBT." (Doc. 20, #250 (emphasis omitted)). Kemen responds that those allegations offer relevant support for the elements of her TCPA claim, and that they "demonstrate that the class is numerous, that Plaintiff is a typical class member, and that Plaintiff and the class's claims share common issues." (Doc. 25, #286).

Plaintiff has the better argument. The Court is not relying on the anonymous internet allegations to support Kemen's own TCPA claim—as previously discussed, Kemen has provided enough other allegations for that claim to warrant leave to amend. Nor is the Court saying that such anonymous allegations constitute admissible evidence. No party has raised the issue, but anonymous internet allegations strike the Court as presenting a classic hearsay problem. But the anonymous internet allegations could be relevant if subsequently proven with admissible evidence. For example, "[Kemen] alleges that the[ Indeed] reviews were posted and that they consist of conduct that [Cincinnati Bell] employees undertook … that may violate the TCPA." *Marquette v. HomeAdvisor, Inc.*, No. 6:20-cv-1490, 2021 WL 2942742, at *2 (M.D. Fla. Jan. 15, 2021). If proven, such allegations—which speak to willfulness—perhaps may be relevant to the question of damages. 47 U.S.C. § 227(c)(5) ("If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an

amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."). The job posting, which seeks individuals willing to engage in cold calling, is similarly perhaps relevant to the willfulness issue if subsequently proven. And the consumer complaints, if proven, could be relevant to Kemen's class allegations. *Marquette*, 2021 WL 2942742, at *2 ("These allegations could be helpful to establish the various Rule 23 requirements necessary to certify a class; if true, they show that other people have had similar experiences with [Defendant]."). So Cincinnati Bell has not shown that the allegations it seeks to strike "ha[ve] no possible relation to the controversy." *Brown & Williamson*, 201 F.2d at 822. The Court therefore declines to strike them at this stage.

Cincinnati Bell resists this conclusion by pointing to six cases in which courts struck anonymous internet complaints or allegations from other complaints. (Doc. 20, #249; Doc. 26, #294). It also cites cases opining on the general unreliability of anonymous internet complaints. Each of the cases, though, is distinguishable.

Start with *Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020). Hicks relied on anonymous online complaints and a vague assertion about previous lawsuits to allege elements of his own individual claims. *Id.* at *5 ("Plaintiff's support for the 'pre-recorded' characterization of the call is that it was generic, impersonal, and 'other consumers have complained about receiving calls transmitting the identical prerecorded voice message.' … [T]he website does not mention Alarm.com and the other recordings on that website are not identical as a group or to the one Plaintiff provides."); *id.* at *6 ("[P]aragraph 22 states that there

14

are 'myriad online complaints' about Defendant's same unlawful telemarketing practices as evidenced at www.ShouldIAnswer.com … [T]h[e] number [listed in the complaint] has a negative rating, as '9 users rated [the phone number] as negative' … [C]haracteriz[ing] a total of nine anonymous online entries as 'myriad online complaints' is hyperbolic and unsupported."); *id.* ("Plaintiff also alleges support for the instant claims by stating[,] 'Alarm.com has previously been sued over its TCPA violations.' There are no details or facts related to or in support of this assertion." (citation omitted)). The *Hicks* court found that those allegations were not enough to tie the online complaints to the defendant, or to satisfy the elements of Hicks's own individual claims. *Id.* at *6 ("Even assuming these allegations are properly pinned to this Defendant, there remains insufficient factual information under § 227(b)(1)(B) that Defendant *initiated* the prerecorded call. Furthermore, the pre-recorded call does not specifically name Alarm.com, and the anonymous third-party reports on directory.youmail.com are not expressly linked to Defendant.").

But here, Kemen is not relying on these allegations to render plausible the basic elements of her own TCPA claim. Nor does she speak in sweeping generalizations or hyperbolically exaggerate the number of online complaints she cites. Rather, she cites to specific reviews and online complaints, which may be relevant (if proven) for the reasons discussed above. So *Hicks* is not persuasive.

*Wiseberg v. Toyota Motor Corporation*, No. CIV.A. 11-3776 JLL, 2012 WL 1108542 (D.N.J. Mar. 30, 2012), is no better. Plaintiffs in that case used anonymous internet complaints as the sole basis for alleging that the defendant was aware of

defects in its products without "point[ing] to other sources as having given Defendant notice." *Id.* at *13; *see also id.* ("While anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that Toyota was aware of these complaints."). And knowledge was a necessary element of one of their state-law consumer protection claims. *Id.* at *3. But a rule that a party may not rely solely on anonymous internet complaints to raise plausible factual allegations establishing a necessary element of that party's own claim does not help Cincinnati Bell here. Kemen is not relying on these internet allegations as the sole basis for any element of her claim.

*Porter v. Fairbanks Capital Corporation*, No. 01 C 9106, 2003 WL 21210115 (N.D. Ill. May 21, 2003), is similarly unhelpful. The court in that case struck clearly irrelevant internet complaints. *Id.* at *7 ("A great portion of the material does not even concern Fairbanks's servicing practices … [and] the material that does refer to Fairbanks … is irrelevant to the facts alleged in the complaint. The material appears to have been attached to the complaint solely for the purpose of prejudicing defendant."). But Kemen's internet allegations are potentially relevant to this case, as the Court has already explained. So *Porter* is not on point.

Finally, the complaints in each of the other three cases Defendant cites attempted to rely on unproven, uninvestigated allegations lifted from complaints in other cases (i.e., "complaints" in the sense of legal filings that open a case) as though they were facts capable of supporting the plaintiff's cause of action. *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070–71 (S.D. Cal. 2017) ("Although our Circuit has not

squarely addressed this issue, this Court agrees that unproven state-court allegations may not validly support a plaintiff's cause of action in this Court."); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) ("As a general rule, paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." (cleaned up)); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-0302, 2011 WL 4389689, at *19, *21 (C.D. Cal. May 5, 2011) ("Sieracki complains that the [complaint] quotes and cites to unproven, untested allegations in complaints filed in separate lawsuits, as if they were facts. … Because Plaintiffs have not reasonably investigated the allegations they copied from complaints in other cases, the Court GRANTS Defendant Sieracki's motion to strike." (emphasis removed)). But Kemen is relying on material from "complaints" in an entirely different sense of that word— negative online comments about and reviews of Cincinnati Bell. So those cases are not directly relevant either.

In short, Cincinnati Bell has failed to show that the allegations with which it takes issue are necessarily immaterial to this case. And the cases it cites do not persuade the Court otherwise. Whether the allegations, if capable of being established by competent evidence or otherwise proven, end up being relevant to the matter at hand is a different question, and one the Court does not answer now. But as things stand, the Court will not strike the allegations about the job posting, the Indeed reviews, or the BBB complaints.

### 2.    The Class Allegations

That leaves Cincinnati Bell's argument to strike Kemen's class allegations.

The Second Amended Complaint proposes the following "Internal Do Not Call Class":

> All persons in the United States who from four years prior to the filing
> of this action through trial (1) Defendant (or an agent acting on behalf
> of the Defendant) called more than one time, (2) within any 12-month
> period, (3) for substantially the same reason Defendant called Plaintiff,
> including (4) at least one call after they requested that Defendant stop
> calling.

(Doc. 19, #225). It also excludes various persons from that definition. (*Id.* at #225–

26). And it notes that "Plaintiff anticipates the need to amend the Class definitions

[sic] following appropriate discovery." (*Id.* at #226).

To prevail on its effort to squelch the class aspect of this litigation right out of

the gate, Cincinnati Bell faces an uphill climb. It must persuade the Court that, "from

the face of the complaint, it will be impossible to certify the class as alleged,

regardless of the facts plaintiffs may be able to prove." *Carmen*, 2021 WL 2476882,

at *11 (cleaned up). At the certification stage, proposed classes must meet the four

requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality,

typicality, and adequacy of representation. They must also satisfy one of the

conditions of Rule 23(b). One way to do that is to show both that "questions of law or

fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). So to

defeat the class component now, Cincinnati Bell would need to show that, on the face

of Kemen's allegations, she cannot make one or more of these necessary showings, no matter what discovery may reveal.

Cincinnati Bell takes two stabs at that showing. First, it says Kemen's class definition is "impermissibly overbroad on its face" because the class "would include individuals for whom there could be no TCPA liability against [Cincinnati Bell] as a matter of law." (Doc. 20, #252–53). That is because the class definition sweeps in non-residential subscribers and individuals who "received only one alleged violative call after a DNC request." (*Id.* at #252). Second, Cincinnati Bell says that "individualized consent inquiries," rather than common questions of law and fact, necessarily predominate. (*Id.* at #253–55; *id.* at #253 ("[T]he critical legal and factual issues of consent and revocation of consent are inextricably intertwined with Plaintiff's proposed class definition as pled, and individualized determinations on those issues would be needed at the minimum.")).

Kemen offers four arguments in response. First, she says the class is not overbroad because it "is limited to consumers who received two or more calls as required to establish a private right of action under 47 U.S.C. § 227(c)." (Doc. 25, #287). Second, to the degree that the definition is overbroad, she can amend it (with the benefit of discovery) to exclude non-residential subscribers before seeking certification. (*Id.* at #288). Third, "Cincinnati Bell's mere allusion to potential consent defenses is not enough to find Plaintiff's classes uncertifiable at this or any other stage." (*Id.*). And finally, Cincinnati Bell's own records can be used "to determine who

made an internal do not call request but was continuously called by Cincinnati Bell." (*Id.* at #288–89).

Kemen prevails on this argument, too. Cincinnati Bell's arguments turn on whether it has maintained internal records of (1) consumers who requested no further contact, and (2) prospective customers whom it has called to market its services. If such records exist, assessing whether each prospective class member satisfies each element required to state a TCPA claim is merely an issue of class member identification, rather than an insurmountable bar to future class certification. *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, Nos. 8:07-cv-298, 8:08-cv-79, 2008 WL 4866604, at *24 (D. Neb. Nov. 7, 2008) ("While Defendants note potential difficulties this Court may face in defining the class, these concerns do not justify a premature dismissal of all class allegations prior to the class certification stage."). The same is true when it comes to the Rule 23(a) class requirements. Without more information, the Court declines to speculate about whether Kemen will be able to satisfy those requirements at the class certification stage. And finally, members of the alleged class might well be identifiable without the Court's needing to adjudicate whether each individual class member revoked their consent—after all, the proposed class definition seems to suggest class members will include only those who objected to being contacted again but were nonetheless subject to further calls—so that is not a reason to strike the class allegations at this stage either. *Meyer v. Receivables Performance Mgmt., LLC*, No. C12-2013RAJ, 2013 WL 1914392, at *2 (W.D. Wash. May 8, 2013) ("Perhaps [Defendant] is correct that consent or other issues will

ultimately require an individualized inquiry, but there is no way to make that determination now. [Defendant]'s motion illustrates why courts typically decide class certification after discovery, not on the pleadings.").

None of those circumstances are guaranteed. Kemen may well be unable to meet her burden for class certification at the end of the day, even with more information. But Cincinnati Bell's arguments on that front are best addressed after discovery. *Carmen*, 2021 WL 2476882, at *13; *In re Jamster Mktg. Litig.*, No. 05-cv-0819, 2009 WL 1456632, at *7 (S.D. Cal. May 22, 2009) ("Even though the arguments of [Defendant] may ultimately prove persuasive, the court declines to address issues of class certification at the present time."). So the Court declines to strike the class allegations. *Donaca v. Metro. Life Ins. Co.*, No. CV 13-05611, 2014 WL 12597152, at *3–4 (C.D. Cal. Jan. 22, 2014) (collecting cases). Accordingly, the Court also denies the motion to strike portion of Cincinnati Bell's filing.

## CONCLUSION

For the reasons discussed above, Court **DENIES** the Motion to Dismiss and/or Strike Certain Improper Allegations from Plaintiff's Second Amended Complaint (Doc. 20).

**SO ORDERED.**

March 22, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**