## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**SUSAN KEMEN,**

      **Plaintiff,**

    **v.**

**CINCINNATI BELL TELEPHONE
COMPANY LLC,**

      **Defendant.**

**Case No. 1:22-cv-152**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Susan Kemen alleges that Defendant Cincinnati Bell Telephone Company LLC, (Cincinnati Bell), violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, by making unwanted telemarketing calls to her cell phone. (*See* Second Am. Compl., Doc. 19). The matter is now before the Court on Cincinnati Bell's Motion to Bifurcate Discovery (Doc. 32). For the reasons briefly discussed below, the Court **GRANTS** the Motion.[1]

Because the Court recounted the factual and procedural background of this case in detail in its previous Opinions and Orders, (Doc. 12, #149–53; Doc. 29, #308–15), it does not do so here. At a high level, Kemen alleges that, after she filled out a quote request form on Cincinnati Bell's website, Cincinnati Bell repeatedly called and emailed her to solicit her to buy its "products and services" despite her multiple requests that it stop contacting her. (Doc. 19, #222–25). She allegedly received four

---

[1] Because the Court is granting this Motion, it also notes that it **DENIES AS MOOT** Cincinnati Bell's request for oral argument on the Motion, (Doc. 35, #367).

phone calls and one email in 12 days. (*Id.* at #223–24). So she sued, alleging violations of the TCPA. (Compl., Doc. 1). After several rounds of motions practice, the operative complaint is the Second Amended Complaint. (Doc. 19). It raises a single claim under subsection (c)(5) of the TCPA, 47 U.S.C. § 227(c)(5), for breaching the requirements of 47 C.F.R. § 64.1200(d). (Doc. 19, #227–29).

Cincinnati Bell has now moved to bifurcate discovery. (Doc. 32). Citing a desire to avoid costly, resource-intensive putative-class-based discovery, Cincinnati Bell seeks a 90-day limited discovery period during which the parties will focus solely on discovery relating to the merits of Kemen's individual claim. (*Id.* at #347). According to Cincinnati Bell, those relevant issues are: (1) "whether [it] ha[d] the requisite minimum procedures in place at the time of the alleged calls"; (2) whether Kemen made a legally effective do-not-call (DNC) request, and whether her request was honored in a "reasonable" amount of time; (3) whether Kemen is a "residential telephone subscriber"; and (iv) whether she has standing. (*Id.* at #354). Kemen responds that all class members' claims (including her own) will depend on whether Cincinnati Bell had adequate procedures in place. (Doc. 34, #363). And she says answering that question "necessarily requires discovery regarding who, other than Plaintiff, may have requested to not be called, and whether their requests were properly recorded and timely honored." (*Id.* at #364). As discussed below, Cincinnati Bell has the better argument.

The decision to bifurcate discovery "is within the discretion of the court. To determine whether bifurcating discovery is appropriate, courts consider the benefits

and detriments to each party's interest, as well as the Court's interest in reaching a just, speedy, and efficient resolution of the issues raised by the pleadings." *Chenault v. Beiersdorf, Inc.*, No. 1:20-cv-174, 2020 WL 5016795, at *2 (S.D. Ohio Aug. 24, 2020) (cleaned up); *Garcia v. Travco Ins. Co.*, No. 1:23-cv-439, 2023 WL 11116754, at *1 (S.D. Ohio Dec. 6, 2023) ("Federal Rule of Civil Procedure 42(b) permits the Court in its discretion to bifurcate claims for convenience, to avoid prejudice, or to expedite and to economize." (cleaned up)). In line with those principles, bifurcation "is permissible if it serves judicial economy and does not unfairly prejudice any party." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-cv-491, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) (citing *Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1152 (6th Cir. 1988)). When evaluating prejudice, the Court considers whether bifurcation will create substantial costs or delays. *See Brown v. Toscano*, 630 F. Supp. 2d 1342, 1347 (S.D. Fla. 2008) ("An unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation." (cleaned up)); *Blankenship v. Jordan*, No. 3:19-cv-372, 2019 WL 4197115, at *4 (S.D.W. Va. Sept. 3, 2019) ("[C]osts and delays are strong evidence that an insured will be unduly prejudiced by bifurcated discovery."). As this description suggests, "a decision ordering bifurcation is dependent on the facts and circumstances of each case." *Garcia*, 2023 WL 11116754, at *2.

Kemen brings a single claim for violating the TCPA and related regulations. And on that front, the Court reads the Second Amended Complaint as alleging that Cincinnati Bell had no policies in place at all, or that the *content* of those policies was inadequate, rather than alleging that Cincinnati Bell had adopted policies as a formal

matter but disregarded them in practice. Indeed, in its previous Opinion and Order in this matter, the Court referred to the claimed lack of a policy (or at least one that met the minimum regulatory requirements) as the plausible inference arising from Kemen's factual allegations that would allow Kemen's case to move forward. (Doc. 17, #213 ("[P]erhaps on a fuller understanding of the record, the Court (or a jury) will conclude Cincinnati Bell had a policy in place designed to honor Kemen's request within a reasonable time. But for now, … a twelve-day delay is long enough to support a plausible inference Cincinnati Bell *lacked the requisite minimum procedures*." (emphasis added)); *see also* Doc. 29, #318 (noting that the Court's denial of Cincinnati Bell's dismissal was premised on Kemen's plausibly alleging that Cincinnati Bell did not have "the requisite minimum internal procedures in place")). That allegation remains the crux of her sole claim, as she has framed it.

So then, to prevail on her claim as pleaded, Kemen must prove that: (1) she is a residential phone subscriber, (2) who received a call made for telemarketing purposes, (3) from an entity that has not instituted the minimum procedures required by 47 C.F.R. § 64.1200(d) (either because the policies did not exist or because their contents fell below the minimum requirements), (4) more than one time in a twelve-month period. *See* TCPA, 47 U.S.C. § 227(a), (c)(5); 47 C.F.R. § 64.1200(d), (f)(13). As to third element, the "minimum standards" for procedures the entity "institute[s]" require those procedures to include provisions calling for the entity: (1) to have "a written policy, available upon demand, for maintaining a do-not-call list"; (2) to train all "[p]ersonnel … who are engaged in any aspect of telemarketing" on the existence

4

and use of that DNC list; (3) to record DNC requests and "honor" them "within a reasonable time"; (4) to have employees engaged in telemarketing activities identify themselves when making calls; (5) to apply DNC requests to affiliated entities if "the consumer reasonably would expect them to be included"; and (6) to maintain a DNC list and to honor DNC requests for 5 years from the request. 47 C.F.R. § 64.1200(d)(1)–(6). So here, Kemen is claiming that Cincinnati Bell has no policy for internal DNC lists at all, or that the policy Cincinnati Bell has does not include these required component parts.

Given that understanding of the claim, coupled with the other individualized defenses that Cincinnati Bell asserts relating to Kemen and the calls Kemen alleges she received, the Court concludes bifurcating discovery is appropriate. Class discovery is expensive and resource intensive. *Babare v. Sigue Corp.*, No. C20-0894, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020) ("It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *cf. Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-11, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013) (noting that a TCPA class action involved "the potential for hefty litigation expenses and an extensive use of judicial resources"). And "the need for class discovery may be eliminated if Defendant is able to demonstrate that the Named Plaintiff lacks viable individual claims." *Osidi v. Assurance IQ, LLC*, No. 21-cv-11320, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022). Especially given the nature of the allegations here, it is reasonable for Cincinnati Bell to seek to test Kemen's personal claims before engaging in extensive class discovery.

The limited discovery necessary to test Kemen's claims would focus on (1) her standing, (2) whether she is a residential subscriber within the meaning of the TCPA's regulations, (3) whether she made a legally effective DNC request, and (4) the existence and contents of Cincinnati Bell's policies. If the facts obtained through the limited discovery show she fails on any of the first three fronts, presumably that would be the end of the matter.

But as to the fourth issue (and assuming Cincinnati Bell does not prevail, based on the limited discovery, as to any of the first three), the Court acknowledges that discovery relating to the existence and contents of Cincinnati Bell's policies may not fully answer the question. After all, even if Cincinnati Bell had a policy in place that met the minimum requirements as written, Kemen presumably still could seek to show she received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" the terms of the written policy itself. 47 U.S.C. § 227(c)(5). That in turn could raise questions as to whether Cincinnati Bell had actually "instituted" the policy as the regulations require. 47 C.F.R. § 64.1200(d). Or perhaps to put it a little differently, at that point, the statutorily provided "affirmative defense"—"that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations"—would come into play. 47 U.S.C. § 227(c)(5). Should the parties need to explore that affirmative defense, questions of how well Cincinnati Bell followed its own policies and how much oversight it exercised over its employees on that front—both of which would likely require broader

6

discovery—could come to the fore given they are relevant to the "due care" element of that defense. But as things stand Kemen is not alleging (and has pleaded no facts suggesting) that Cincinnati Bell has a regulatorily-compliant policy that it is failing to follow. So the Court declines to borrow trouble now by discussing the potential need for broader discovery on such issues down the road. In short, even as to this fourth issue, because Kemen has framed her claim as whether Cincinnati Bell even *has* policies that reflect the requirements set forth in 47 C.F.R. § 64.1200(d), the amount of discovery needed to answer *that* question should be comparatively modest.

Taken altogether, Cincinnati Bell has identified various threshold issues that both require little discovery and could be dispositive of Kemen's individual claim. So bifurcating discovery has the potential to promote the "speedy" and "efficient" resolution of this matter. *Chenault*, 2020 WL 5016795, at *2. Doing so therefore avoids potential prejudice to Cincinnati Bell (in the form of substantial, unnecessary costs) and "serves judicial economy." *Galloway*, 2010 WL 3927815, at *1.

On the other side of the scale, bifurcation will require Kemen to produce only a comparatively modest amount of discovery, much of which (a) is likely already in her possession or easily obtainable and (b) she would need to produce in any event even absent bifurcation. Moreover, a 90-day discovery period will not substantially delay this case. So the Court concludes that bifurcating discovery will not unduly prejudice Kemen. *See Brown*, 630 F. Supp. 2d at 1347; *Blankenship*, 2019 WL 4197115, at *4.

## CONCLUSION

For the reasons discussed above, Court **GRANTS** the Motion to Bifurcate Discovery (Doc. 32). The parties **SHALL** conduct 90 days of discovery limited to the following topics: (1) Kemen's standing; (2) whether she is a residential subscriber within the meaning of the TCPA regulations; (3) whether she made a legally effective DNC request; and (4) the existence and contents of Cincinnati Bell's internal DNC policies. Absent a future order of the Court to the contrary, the limited discovery period will close 90 days from the date of the entry of this Order. Until then, the parties **SHALL NOT** engage in discovery on other topics (absent mutual agreement). Any discovery previously issued on topics other than those set forth above is hereby **STAYED** (again, absent mutual agreement).

      **SO ORDERED.**

August 2, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

8